**UNITED STATES DISTRICT COURT**
**OF MASSACHUSETTS**

FILED
CLERKS OFFICE
2005 APR -4 P 3: 57

U.S. DISTRICT COURT
DISTRICT OF MASS

| | |
|---|---|
| UNITED STATES OF AMERICA | ] |
| | ] |
| v. | ] Case No. 1:01CR10369005 PBS |
| | ] |
| BUENAVENTURA LOVOS | ] |

Response of Defendant to the Government
Opposition of the Said Case

Comes now, the Defendant and submits the response to this Honorable Court Prosecutor or District Court Judge opposition of said case, memorandum is set forth on all grounds and being respectfully submitted.

The Confrontation Clause commands that reliability be assessed in a particular manner, by testing in the crucible of cross examination. Whether a statement is deemed reliable depends on which factors a judge considers and how much weight he accords each of them. However, the unpardonable vice of the test is its demonstrated capacity to admit core testimonial statement that the Confrontation Clause plainly meant to exclude.

This instant case is a self contained demonstration of **"Myriam Silva"** unpredictable and inconsistent testimony who admitted she lied, after being **"caught"** lying. It also reveals the failure of court to interpret the constitution in a way that secures it's intended constraint on judicial discretion. The constitution prescribes the procedure for determining the reliability of testimony in criminal trial, and this court, no less than the state court, lacks authority to replace it with one of its own devising.

## Certification of Service

I hereby certify that a true copy of the foregoing was mailed first class to the U.S. District Court of Massachusetts, and the U.S. Attorney office at U.S. Courthouse, Suite 9200, 1 Courthouse Way, Boston, Massachusetts, 02210 on this 28 day of March 2005

Respectfully Submitted

Buena Ventura Lovos
Reg. No. 24035-038
F.C.I. Ashland
P.O. Box 6001
Ashland, KY 41105

Defendant states notwithstanding by admitting the evidence would violate his federal constitutional rights. Her statement did not bear adequate indicia of reliability. Her statement did not fall within a firmly rooted exception, or bear particularized guarantee of trustworthiness , and note several reasons why it did not.

The statement contradicted, one, that she had previously given, and at one point she admitted to lieing to the prosecutor, agents in the investigation, and under oath, this statement was crucial to defendant defense.

Also this special obligation of the government was to avoid improper suggestions, and insinuations, as to what is right and wrong, and the vouching as the court did and the prosecutor as to the witness testimony.

My understanding of the law vouching which consist of either placing the prestige of the government behind the witness through personal assurances of their veracity or suggesting that information support the witness testimony is improper. See **United States v. Wallace**, 848 F.2d 1464, 1473 (9th Cir. 1988); **United States v. Roberts**, 618 F.2d 530, 535 (9th Cir. 1980) Vouching is especially problematic in circumstantial evidence cases, as here, where the credibility of the witness is crucial. In a number of cases applying the more lenient harmless error standards of review, the Ninth Circuit has held that such vouching requires reversal. **Roberts**, 618 F.2d at 535, **United States v. West**, 680 F.2d 652, 657 (9th Cir. 1982)

With this principles in mind, defendant turn to the prosecutor statements in this case that his witness testify to alleges to what was going on. The government conceded stating that she "Silva" pleaded guilty in state court to conspiracy to distribute the drugs other then heroin. Also the government submitted a letter agreement to "Silva" stating that she must testify "truthfully", this letter was a form of immunity. **"This did not happen concerning the truthfullness in her statements"**

On **June 27, 2002,** "Silva" met with the government for a proffer session in the office of her attorney. First, I must state,

-2-

tacit agreement, or a mutal understanding of the parties. **United States v. Maliszewski,** 161 F.3d 992, 1006 (1998) Mere presence at the crime scene is insufficient to show participation.

The government bears the burden of demonstrating that a defendant was aware of the conspiracy and the he voluntarily associated himself with the conspiracy to further its objective. **United States v. Gibb,** 182 F.3d 408 (6th Cir. 1999)

The distinction between mere association with conspirators and "participation" in a conspiracy is an especiall important today when prosecutor seek to sweep within the drag net of conspiracy all of those who have been associated in any degree whatever with the main offenders.

The **Gibb** court reversed defendant conspiracy conviction after finding that the government's proof at trial was insufficient. Also in **Coppin,** 2001 WL 30505 (2001), the court reversed the conviction.

There was absolutely no evidence of any agreement, either actual or tacit, and no evidence of defendant's participation. The only witness was a lady who admitted she lied, as stated throughout this petition.

As a matter of fact, no officer of the police department that testified never stated there were any sales or saw the defendant engaging in bagging this drug he is charged with. There were no address book that contained numerous name of members who were in no way connected to drugs sale or conspiracy. Setting in a room talking did not prove defendant was bagging drugs up. Nothing! This case must be reversed.

its easy to see why the government prosecutor met with this so-called witness, in this attorney office. **This is called doing it by the book of law.** The assumption is there was "orthodox" methods of building a case that savvy the honest prosecutor uses. It is common sense to see that one can build a case like selecting recipes from a cookbook, isolating the witness, to say what he or she wants to hear.

Counsel for the witness probe their client for "dirt" they may have on other so-called big fish; grants of limited immunity and potentially far reaching plea bargains are powerful incentives for witnesses to be cooperative, and threats of prosecution for perjury based on often inconsistencies in testimony, all combine to make a case.

Now, do all these threats and inducements motivate a person to tell the truth, or to tell the prosecutor what he or she want to hear? At this point it is cliche to see through the transparency of this situation of defendant, when at the grand jury stage.

Shortly before trial, the government knew that 'Silva had lied on June 27, 02 in the proffer session, but never brought it to counsel of defendant, or to the court attention. This was sort of Brady material.

In 1940, **Justice Robert Jackson**, addressing the second annual conference of United States Attorney, said, and I quote:

> "A citizen safety lies, in the prosecutor who seeks truth and not victims. Five years earlier, in **Berger v. Unites States**, 36, the Supreme Court reversed the conviction of a defendant because of the prosecutor's misconduct and held; The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its obligation to govern at all, and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done...he may prosecute with earnestness and vigor, indeed, he should do so, but while he may strike hard blows, he is not at liberty to

-3-

"thats' germain", everything that this lady stated was **intentionally**. In this case the conviction was tainted, in any concept of order liberty, does not cease to apply merely because the false testimony goes only to the credibility of the witness.

The jury's estimate of the truthfulness and reliability of a given witness may well be determinative of guilt or innocence, and it is upon such subtle factor as the possible interest of the witness in testifying falsely that a defendant's life or liberty may depend as stated by the New York Court of Appeals in a case very similar to this case. **People v. Savvidis**, 1NY.2d 554, 557, 154 N.Y. S.2d 885, 887, 136 N.E. 2d 853, 854-885. The case must be reverse to correct a unjust incarceration.

### The evidence was insufficient to prove that the defendant was a member of a conspiracy.

The defendant submit that the evidence was insufficient to prove that he was guilty of the conspiracy to possess with intent to distribute heroin in both counts 1 and 2.

Specifically, defendant submit that the evidence was insufficient to prove he had knowledge and intent to join the conspiracy, that he had any agreement to violate the drug law, or that he participated in anyway in the conspiracy. Defendant submit that the evidence at most by the **"New Bedfofd Police officers"** proves his presence and association with members of the conspiracy, this is why he went to trial.

To prove a conspiracy, the government must prove (1) an agreement to violate the drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy. **United States v. Welch**, 97 F.3d 142, 148 (6th Cir. 1996)

A conspiracy defendant need not have knowledge of every phase of a conspiracy, rather the government must prove that the defendant had knowledge that his criminal conduct was connected to the sucess of the conspiracy venture. **United States v. Gaitan-Acevedo**, 148 F.3d 577, 586 (6th Cir. 1998) The government bears the burden of proving that, a defendant entered into an agreement, this essential element can be proven by evidence of a formal agreement, a

strike foul ones.  It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

Counsel was ineffective in failing to challenging the conduct of the prosecutor.  When if it falls short of heinous wrongdoing such as withholding evidence or suborning perjury, should remind courts of the prosecutor's duty.

As stated this lady "**Silva**" during this session before trial at the "New Bedford Police Station, "**lied**" about her drug sales. She also "**lied**" that defendant **Lovos** and **Pachico** brought a **blue bag to the apartment containing heroin** and related processing item. When in fact it was her close friend who live in the apartment "**Mark Ramos, aka Markie**, according to her trial testimony.

It was only after the prosecutor heard this testimony that he stated in his disposition.  It was made to seem as if his witness had told the truth from the very beginning, inwhich he was vouching and misrepresented the facts and the truth.  Now the truth is this: see **United States v, Dwyer**, 843 F.2d 60 (1st Cir. 1988)

> "It was improper for the trial court to instruct the jury that 'although an immunized witness may not be prosecuted for past crimes revealed by his testimony, when an immunized witness is subject to prosecution for perjury if he intentionally lies under oath.  This amounts to a comment on the credibility of the unindicted co-conspirator's testimony which was given under a grant of immunity.

Why was the witness Ms "**Silva**" not charge with **perjury**? Or can you answer the question?...if so answer!

Moreover, the prosecutor improperly vouching for the lady **Ms Silva** credibility gave the impression that the evidence presented to the jury was trustworthy, and I quote:

> "**Now, obviously, Myriam Silva, comes with some baggage. She's an admitted liar, a deliberate liar.  She looked at me twice, she was right across from me, and lied to me...**

-4-

It is of consequence that the falsehood bore upon the witness credibility rather than directly upon defendant guilt.  A lie is a lie no matter what its subject, and if it is in any way revelent to the case, the prosecutor has a duty as this court to correct what they know to be false and elicit the truth.  As a matter of fact, the witness should have been charged under 442 U.S.C. 1018, for lying to federal officers in the investigation and under oath.

The impact of the jury from the vouching of the prosecutor and the court instruction, now I can not predict a jury any better than anyone else, but I think the defendant was hurt pretty bad by the vouching of the credibility of the government witness, and other witness, so he had every reason to commit a wrongful act.

Now in the opening statement, as the court advise the jury, is not evidence, **what lawyer say is not evidence**.  What the government must do is put on **"evidence"**, **"real evidence"** such as testimony, real testimony, not testimony that is **"unpredictable, inconsistent, and not trustworthyness**, and this is what the government did and knew about the lies, their witness provided.  Quite frankly, the defendant was prejudice.

First and foremost, and the court would agree that the testimony proves the essential element of perjury, and it is critical to the defendant, because it is the explanation that **Ms "Silva"** gave when first confronted with the circumstances of this case.

So the extent that explanation is either viable or on the other hand seems made up, inwhich she admitted she lied.  It goes to the heart of the testimony given, not necessarily whether the defendant is guilty, but her credibility, and the evidence against defendant is not overwhelming, and critical to defendant.

There is no room for vouching and interpretation. **"She lied under oath,"** the record speaks for itself.  Defendant found out under an extensive cross examination that **Ms Silva, unequivocally lied, "thats' germain"** repeatedly admitted to have lied to the government during two interviews, **"thats' germain"** at trial, **"thats' germain"** and the fact that she had been **promised this immunity,**

-6-

Before I go on, this prosecutor lied because he knew she lied before trial and he knew she had lied. As you read this response you will see why he made this statement to cover himself. Now I go on to quote:

> Mr Sorokim cross-examined her about her lies, and I don't recall how many time she admitted it, but she admitted I lied, yes, I lied, yes, I falsely falsified....I falsely gave that information."

This is perjury, but no charges by the government, why? Please answer? Now the statement of this prosecutor is vouching and a special kind of personal opinion and a example of prosecutorial overkill. It exploit directly the influence of the government witness. The prosecutor perceives the case personally. Rather than acting in the role of a advocate for the public interest in a fair and impartial determination of guilt or innocence, now the prosecutor goes on vouching to the jurors' concerning the witness credibility, and I quote his appealing to the jury:

> "Now, in assessing Myriam Silva's credibility. After all the lies that she told, this fact that she used cocaine for 15 years, whether it was crack, rock, or whatever, she admitted to you she used cocaine for 15 years. She allowed other to store heroin in her apartment, she sold heroin, she admitted those things.

Before I go on with this prosecutor vouching, I must state, we have a lady who has committed 15 felon offense of the United States distribution of drugs to anyone. Who's to say she did not sell to children. The prosecutor conceded that she admitted lieing, smoked crack cocaine, sold crack cocaine and hydrochlorido powder cocaine, sold heroin and lied that she did not. This person should not be trusted. Now to the court, would you trust this person? There is no credibility in this person.

This person will sell their mother, friend and anyone who stand in their way to obtain a deal, and why did she lie to keep from loosing her children. A crack head will sell their kids to get what they want.

-5-